IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | | |
|---|---|---|---|
| EDWARD W. HARTMAN, | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | Civil Action No. 5:13-cv-00109 | |
| | ) | | |
| CAROLYN W. COLVIN, | ) | | |
| Acting Commissioner of Social Security, | ) | By: | Joel C. Hoppe |
| Defendant. | ) | | United States Magistrate Judge |

**REPORT AND RECOMMENDATION**

Plaintiff Edward W. Hartman seeks review of the Commissioner of Social Security's ("Commissioner") final decision denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–434, 1381–1383f. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), and this case is before the undersigned magistrate judge by referral under 28 U.S.C. § 636(b)(1)(B). After considering the administrative record, the parties' briefs and oral arguments, and the applicable law, I find that the Commissioner's decision is not supported by substantial evidence, and I recommend that the case be remanded for further administrative proceedings.

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final determination that a person is not entitled to disability benefits. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, the Court asks only whether the Administrative Law Judge ("ALJ") applied the

1

correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951). Ultimately, this Court must affirm the ALJ's factual findings if "'conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled.'" *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks omitted)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" if he or she is unable engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a) (governing claims for DIB), 416.905(a) (governing adult claims for SSI). Social Security ALJs follow a five-step process to determine whether an applicant is disabled. The ALJ asks, in sequence, whether the applicant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5)

2

whether he or she can perform other work. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983). The applicant bears the burden of proof at steps one through four. *Hancock*, 667 F.3d at 472. At step five, the burden shifts to the agency to prove that the applicant is not disabled. *See id.*

## II. Procedural History

Hartman was born on April 4, 1976, Administrative Record ("R.") 178, 182, and at the time of the ALJ's decision was considered a "younger person" under 20 C.F.R. §§ 404.1563(c) and 416.963(c). He completed the eleventh grade and has prior work history as a construction helper, farm helper, and roofer. R. 235. Hartman applied for DIB on November 16, 2010, R. 178–79, and SSI on February 3, 2011, R. 182–90. He alleged a disability onset date of May 19, 2010, based on the following conditions: brain hemorrhage, chronic back pain, learning issues, short-term memory issues, and subarachnoid hemorrhage. R. 178, 182, 230, 234.

The Commissioner rejected Hartman's applications initially and on reconsideration. R. 18. On June 13, 2012, the ALJ held an administrative hearing at which Hartman was represented by counsel. R. 34–62. In an opinion dated July 12, 2012, the ALJ found that Hartman had brain hemorrhage, borderline intellectual functioning, scoliosis, and headaches, which qualified as severe impairments. R. 20. The ALJ determined that none of these impairments met or equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 21–22. The ALJ found that Hartman had the residual functional capacity ("RFC") to perform medium work,[1] except that he must avoid concentrated exposure to hazards. R. 22. The ALJ further limited Hartman to performing simple, unskilled work. *Id.* Based on this RFC, the ALJ determined that

---

[1] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, he or she also can do light and sedentary work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c).

3

Hartman could perform his past work as a turkey-farm helper. R. 27. In the alternative, the ALJ found that Hartman's nonexertional limitations, specifically his need to avoid concentrated exposure to hazards, did not significantly erode the job base for unskilled medium exertion work. R. 28. He relied on the Medical-Vocational Guidelines (the "Grids"), 20 C.F.R. pt. 404, subpt. P, app. 1, to find that jobs existed in the national economy that Hartman could perform. *Id.* Accordingly, the ALJ determined that Hartman was not disabled under the Act. R. 28–29. The Appeals Council denied Hartman's request for review, R. 1–4, and this appeal followed.

Before moving to the merits of the appeal, I must address a lingering procedural issue. In proceedings before this Court, the Commissioner did not file a responsive pleading to Hartman's complaint in the time allowed. Before a default was entered by the Clerk, Hartman moved for default judgment. ECF No. 9. The Clerk then entered default. ECF No. 11. The Commissioner promptly moved to set aside the default, ECF No. 12, which the undersigned magistrate judge granted, ECF No. 14. The Clerk set aside the entry of default, ECF No. 11 (staff note vacating the entry of default), and the Commissioner filed an answer the following day, ECF No. 15. Hartman objected to the order setting aside the default and requested an opportunity to file a brief in support of the objection. ECF No. 19. The request was not ruled on, and the parties proceeded to file briefs on the merits of Hartman's appeal.

Rule 55 of the Federal Rules of Civil Procedure requires the moving party to obtain entry of default before moving for a default judgment. *Sigma Capital Group, Inc. v. Blue Harbor Energy, LLC*, No 5:11cv3, 2012 U.S. Dist. LEXIS 151075, at *8 (E.D.N.C. Aug. 24, 2012). Thus, Hartman jumped the gun in moving for default judgment before the Clerk had entered default. The motion for default judgment should be rejected on this basis alone.

4

Additionally, where default judgment is sought against the United States, Rule 55 requires the movant to establish his request for "relief by evidence that satisfies the Court." Fed. R. Civ. P. 55(d). In his brief in support of the motion for default judgment, Hartman addressed the merits of his appeal and requested that the Court award benefits. As discussed below, however, I find that remand is necessary for the Commissioner to further address Hartman's claim. Based on the record, and considering the applicable standard of review, I do not find that this Court can determine that Hartman is eligible for benefits under the Act. Accordingly, I recommend that the presiding District Judge deny Hartman's motion for default judgment.

Both parties have now moved for summary judgment on the merits.

### III. Discussion

Hartman's appeal primarily concerns impairments that were caused by injuries he sustained in an All-Terrain Vehicle accident in 2008. As a result of the accident, Hartman suffered subarachnoid hemorrhage because of a ruptured aneurysm, which the attending physician termed "a slight brain injury." R. 377. Physicians attempted to coil the aneurysm, but, after numerous unsuccessful attempts, they clipped the ruptured aneurysm. *Id.* After the accident, Hartman continued to work at a turkey farm until May 19, 2010. R. 234, 297. He typically worked fewer than 40 hours a week at this job. *See* R. 200–29, 297.

Hartman argues that the ALJ erred in finding that his impairments did not meet a listing, formulating his RFC, and finding that he can perform his past work or other jobs in the national economy.

A.   *Listing*

Hartman argues that the ALJ erred in finding that his impairment did not meet listing § 11.18 for cerebral trauma. Pl. Br. 5–11, ECF No. 21. An impairment meets a listed impairment if

5

it "satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the [one-year] duration requirement." 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). The claimant bears the burden of proving that he or she meets a listing. *Hancock*, 667 F.3d at 476; *Fore v. Astrue*, No. 7:13cv511, 2013 WL 880271, at *3 (W.D. Va. Feb. 13, 2013) (citing *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1992)).

The listing for cerebral trauma is evaluated under the criteria of other listings, in this case listing § 12.02. *See* 20 C.F.R. pt. 404, subpart. P, app. 1 § 11.18. Under listing § 12.02, a claimant must meet the paragraph A criteria as well as either the paragraph B or C criteria. Here the ALJ addressed the paragraph B and C criteria. To satisfy the paragraph B criteria, a claimant must show that he or she meets at least two of the following: marked restrictions in activities of daily living; marked difficulty maintaining social functioning; marked difficulty maintaining concentration, persistence, or pace; or repeated episodes of decompensation of extended duration. 20 C.F.R. pt. 404, subpart P, app. 1, § 12.02(B). Marked "means more than moderate but less than extreme." 20 C.F.R. pt. 404, subpart P, app. 1 § 12.00(C). A restriction may be marked where one or more activities or functions are impaired to a degree that seriously interferes with a claimant's ability "to function independently, appropriately, effectively, and on a sustained basis." *Id.*

The ALJ found that Hartman had mild restrictions in activities of daily living and social functioning and moderate difficulties with concentration, persistence, and pace. R. 22. Hartman argues that the record establishes marked restrictions in each of these three categories. Pl. Br. 8, 10. Hartman does not challenge the ALJ's finding that he experienced no episodes of decompensation—a finding that has ample support in the record. Neither does he challenge the

6

ALJ's findings as to paragraph C, asserting those findings are irrelevant to his condition. Pl. Br. 8.[2]

As to Hartman's activities of daily living, the ALJ found that he took care of his children, prepared meals, and mowed the yard. R. 22. At the administrative hearing, Hartman testified that he used a push mower to cut the grass in a very small yard, prepared his own meals, shopped with others at stores, hunted the previous fall, fished the previous year, maintained his own personal care, and took care of his two year old child while his girlfriend attended school in the evenings. R. 47–48; *see also* R. 260–63. His girlfriend reported that Hartman could engage in these activities when he did not have a headache that required him to stay in bed all day. R. 243, 245. Based on Hartman's report, I find that the ALJ's determination that Hartman had mild restrictions in daily activities is supported by substantial evidence.

Hartman asserts that he is markedly limited in social functioning because he is short-tempered and irritable. Pl. Br. 10. The ALJ found only mild limitations in this category, noting that Hartman spends time with friends, hunts and fishes, and has been in a romantic relationship for 12 years. R. 22.

Hartman consistently reported an increase in irritability since his accident, R. 264, 348, 409, 504, although during a neuropsychological examination conducted by Jeffrey T. Barth, Ph.D., Hartman also said he had always been ornery, R. 504. On examination, Dr. Barth noted that Hartman's social interactions were appropriate and he was cooperative during testing. R. 505. Hartman's employer at the turkey farm said he "let [Hartman] go" because his ability to work declined; he did not report an inability to get along with others. R. 297. As noted by the

---

[2] In his brief, Hartman notes that at the administrative hearing he argued that he also met listing § 12.04. Pl. Br. 7. At oral argument before this Court, Hartman argued that he met listing § 12.04. Hartman, however, did not develop this argument in his brief. In any event, Hartman does not meet listing § 12.04 for the same reasons that he does not meet listing § 12.02, namely he cannot satisfy the paragraph B criteria.

7

ALJ, Hartman has been in a relationship with his girlfriend for 12 years. They reported "ups and downs" in the relationship. R. 505. Hartman said he had decent relationships with his parents and his siblings. *Id.* Although Hartman said he did not spend as much time with friends as he once did, R. 264, he reported socializing with family and friends and watching television and talking on the phone with them on an almost daily basis, R. 48, 263. Hartman's report of daily interaction with friends and family and Dr. Barth's observations that his social interaction was appropriate provide substantial evidence for the ALJ's finding of mild limitation in social functioning.

Hartman also takes issue with the ALJ's determination that he had moderate difficulty in concentration, persistence, and pace. Pl. Br. 6–10. In support of this determination, the ALJ noted that during a neuropsychological examination, Dr. Barth found Hartman to have memory problems and difficulty problem solving. R. 22. Hartman argues that Dr. Barth's findings establish that he had marked difficulties in maintaining concentration, persistence, and pace and that the ALJ conducted a flawed analysis of Dr. Barth's opinions.

During his neuropsychological evaluation, Dr. Barth reviewed Hartman's medical record, documented Hartman's subjective complaints, and conducted a battery of tests and assessments. R. 503–09. Dr. Barth found that Hartman's intellectual function was in the borderline-impaired range. R. 506. On intellectual functioning tests, Hartman's auditory attention, concentration, and auditory working memory were in the low-average range. *Id*. On other tests, his attention and concentration were measured primarily in the average range, with some falling in the mildly-impaired to average range. *Id.* Testing of his learning and memory showed borderline impairment, but Dr. Barth noted that Hartman was able to retain most of the information from the test "over the course of a long delay." R. 507. His immediate auditory attention was mildly to

8

moderately impaired, and his immediate visual memory was in the low-average range. *Id.* Hartman also reported experiencing severe depressive symptoms. *Id.*

Dr. Barth concluded that Hartman may have experienced a traumatic brain injury related to the ruptured aneurysm. *Id.* He found that Hartman's overall cognitive functioning was variable. R. 508. The most notable observation was Hartman's deficit in novel problem solving, which Dr. Barth determined suggested "a mild degree of executive dysfunction." *Id.* Dr. Barth recommended that Hartman undergo psychiatric evaluation[3] and have another neuropsychological evaluation in 12 months. He also made a number of recommendations to help Hartman deal with his headaches and memory problems.

Other medical providers noted Hartman's memory problems, *see* R. 411, 525, 545, but none opined that they caused any, much less marked, limitations on his functional abilities.

At step four of his analysis, the ALJ discussed the treatment records concerning Hartman's aneurysm and Dr. Barth's neuropsychological evaluation. R. 24–25. The ALJ was required to weigh each "medical opinion" in Hartman's record and explain the weight he assigned each opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c), considering the medical source's specialty, the source's familiarity with the applicant, the weight of the evidence supporting the opinion, and the opinion's consistency with other relevant evidence in the record. *Burch v. Apfel*, 9 F. App'x 255, 259 (4th Cir. 2001) (per curiam).

Dr. Barth did not opine as to Hartman's functional limitations or remaining capabilities, as in a mental residual functional capacity assessment. His findings relevant to Hartman's concentration and attention are nonetheless medical opinions, *see* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2), and they showed average functioning with some mild and moderate impairment. These findings do not contradict the ALJ's assessment at step three that Hartman had moderate

---

[3] Hartman never followed up on the recommendation to have a psychiatric exam. *See* R. 525.

9

difficulties in concentration, persistence, and pace. Rather, they confirm it. Thus, the ALJ's failure to assign weight to any of Dr. Barth's findings at step three was harmless.

Furthermore, even if Dr. Barth's evaluation established marked difficulty in concentration, persistence, and pace, such a finding would not change the outcome of the ALJ's listing analysis as Hartman has not met his burden regarding the other paragraph B criteria. Accordingly, I find that substantial evidence supports the ALJ's determination that Hartman's impairment does not meet the listing for cerebral trauma.

B.  *Residual Functional Capacity*

Hartman also challenges the ALJ's determination of his RFC. Pl. Br. 11. A claimant's RFC is the most he can do on a regular and continuing basis despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). "It is an administrative assessment made by the Commissioner based on all the relevant evidence in the [claimant's] record," including objective medical evidence, medical-source opinions, and the claimant's own statements. *Felton-Miller v. Astrue*, 459 F. App'x 226, 230–31 (4th Cir. 2011); *accord* SSR 96-8p, 1996 WL 374184 (July 2, 1996).

The RFC must reflect the combined limiting effects of impairments "supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints." *Carter v. Astrue*, No. 3:10cv510, 2011 WL 2688975, at *3 (E.D. Va. June 23, 2011), *adopted by* 2011 WL 2693392 (July 11, 2011); *accord* 20 C.F.R. §§ 404.1545(e), 416.945(e). Although this Court reviews the RFC determination for substantial evidence, the claimant bears the burden of showing that an omitted limitation should have been included. *See Lowery v. Comm'r of Soc. Sec.*, No. 4:10cv47, 2011 WL 2648470, at *4 (W.D. Va. June 29, 2011) (Crigler, M.J.) ("The claimant's RFC is addressed at the fourth step in the sequential

evaluation, where the burden of proof remains on the claimant."), *adopted by* 2011 WL 2836251 (July 14, 2011) (Kiser, J.).

The ALJ found that Hartman could perform medium work that did not involve concentrated exposure to hazards. R. 22. The ALJ further limited Hartman to simple, unskilled work, but determined that he "is capable of understanding, remembering and carrying out simple instructions; making judgments that are commensurate with the functions of unskilled work (i.e., simple work-related decisions); responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." *Id.* In formulating Hartman's RFC, the ALJ relied heavily on the opinions of the state-agency psychologists, giving them great weight because he found they were consistent with the objective medical evidence of the record. R. 26–27. The ALJ specifically noted the state-agency psychologists' findings that Hartman had memory problems that could affect his concentration, persistence, and pace, but that he would be able to concentrate in two-hour segments in order to complete an eight-hour workday. R. 27.

Hartman's RFC roughly tracks the definition of unskilled work. Unskilled work "is a term of art, defined by regulation as 'work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.'" *Fisher v. Barnhart*, 181 F. App'x 359, 364 n.3 (4th Cir. 2006) (quoting 20 C.F.R. § 404.1568(a)). Competitive, remunerative, unskilled work demands the ability, on a sustained basis, to understand, remember, and execute simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. *See* SSR 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985).

11

A restriction to simple, unskilled work, however, does not necessarily include moderate limitation in concentration, persistence, and pace. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011); *Sexton v. Colvin*, 21 F. Supp. 3d 639, 642–43 (W.D. Va. 2014) (Conrad, C.J.) (reversing and remanding where a hypothetical question did not expressly address that claimant's RFC included moderate difficulty maintaining concentration, persistence, or pace). The term simple, unskilled work itself tells us little, if anything, about the person's "mental condition or abilities," let alone his ability to concentrate on or persist in a task or to maintain the pace required to complete tasks in a competitive work environment. *Craft v. Astrue*, 539 F.3d 668, 677 (7th Cir. 2008); *see also Sexton*, 21 F. Supp. 3d at 642–43.

The ALJ credited the state-agency psychologists' opinions that Hartman had a moderate limitation in concentration, persistence, and pace. Indeed, he also made that finding at step three, and, as discussed above, Dr. Barth's assessment supported it. Yet, Hartman's RFC does not reflect this limitation in concentration, persistence, and pace or an ability to concentrate only for two-hour segments. These findings are significant and supported by the record. The ALJ erred, at the least, by not explaining why they were not included in the RFC, especially when the RFC implicitly contradicted his finding of moderate limitation at step three. Accordingly, I find that the ALJ's RFC determination is not supported by substantial evidence in the record.

C.    *Ability to Perform Past Work*

Hartman challenges the ALJ's finding that, given his RFC, he could perform his past work. R. 11. The ALJ determined that Hartman could perform his past work as a turkey-farm helper as it was actually and is generally performed. R. 27. The ALJ found this work was semi-

skilled and required medium exertion. *Id.*[4] The regulations distinguish between unskilled, semi-skilled, and skilled work. 20 C.F.R. §§ 404.1568, 416.968. Semi-skilled work "needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or . . . other types of activities [that] are similarly less complex than skilled work, but more complex than unskilled work." 20 C.F.R. §§ 404.1568(b), 416.968(b). Considering the distinctions made between the skill levels in the regulations, it is clear that the determination that Hartman could perform his past semi-skilled work conflicts with the ALJ's RFC finding that Hartman was limited to unskilled work. The ALJ provided no explanation to justify this conflict, and no justification is discernible from the record. Accordingly, I find that the ALJ's determination that Hartman can perform his past relevant work is not supported by substantial evidence.

D.   *The Grids*

As an alternative, the ALJ relied on the grids at step five to find that Hartman could perform other work in the national economy.[5] At step five, the Commissioner has the burden to prove that a claimant can perform other work in the economy. *See Hancock*, 667 F.3d at 472. The Commissioner can meet this burden by calling a VE to testify or, in "appropriate cases," by relying on the grids to direct a finding of "not disabled." *Heckler v. Campbell*, 461 U.S. 458, 470 (1983).

The grids are published tables that take administrative notice of the number of unskilled jobs at each exertional level in the national economy. *See* 20 C.F.R. pt. 404, subpt. P, app. 2 §

---

[4] The ALJ cited the DDS physicians' finding that this work was semi-skilled. R. 27. Notably, the DDS physicians determined that Hartman's RFC, which they found limited him to unskilled work, precluded him from performing his past work. R. 105.

[5] Hartman takes issue with the ALJ making alternative findings. I reject this argument. Hartman also challenges some of the ALJ's factual determinations and argues that the ALJ is biased. Because I find that the case requires remand, I do not reach these other arguments.

13

200.00(a); *Davis v. Colvin*, No. 4:13cv35, slip op. at 23 (W.D. Va. July 14, 2014) (Hoppe, M.J.), *adopted by* 2014 WL 3890495 (Aug. 7, 2014) (Kiser, J.). The grids take into account only the exertional, or strength, competent of the claimant's RFC. *See Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989); *Davis*, 2014 WL 3890495, at *14. Thus, the Commissioner generally cannot rely on the grids alone when the claimant's "nonexertional limitation[]" reduces his ability "to perform work of which he is exertionally capable." *Walker*, 889 F.2d at 49. In those cases, the Commissioner must consult a VE to prove that the claimant can perform specific jobs. *Id.*

"[N]ot every malady of a nonexertional nature rises to the level of a nonexertional impairment," however. *Smith v. Schweiker*, 719 F.2d 723, 725 (4th Cir. 1984) (per curiam). Thus, the Commissioner can use the grids as a "framework" if the claimant's nonexertional limitation "does not 'affect' his ability to perform the full range of work of which he . . . is physically capable." *Davis*, 2014 WL 3890495, at *14 (citing *Smith*, 719 F.2d at 725). The ALJ's finding that a limitation does not affect the claimant's ability to perform a full range of unskilled work at a given exertional level must be supported by substantial evidence. *See id.* (citing *Smith*, 719 F.2d at 725); *Hairston v. Astrue*, No. 6:11cv57, 2013 WL 5151036, at *7 (W.D. Va. Sept. 13, 2013).

The ALJ's erroneous RFC determination dooms his finding at step five. Without considering the missing limitations in the RFC, the ALJ could not have properly found that Hartman's "additional limitations have little or no effect on the occupational base of unskilled medium work." R. 28. Accordingly, substantial evidence does not support the ALJ's finding that Hartman can perform other work in the national economy.

14

## IV. Conclusion

For the foregoing reasons, I find that substantial evidence does not support the Commissioner's final decision. I respectfully recommend that Hartman's motion for default judgment, ECF No. 9, be DENIED, the Commissioner's motion for summary judgment, ECF No. 23, be DENIED, the Commissioner's final decision be reversed, and the case be remanded under the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings, including to allow the Commissioner the opportunity to properly assess Hartman's RFC and determine the impact this proper RFC has on his ability to perform his past work and, if necessary, other work in the economy.

## **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Michael F. Urbanski, United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record.

ENTER: January 15, 2015

*/s/ Joel C. Hoppe*

Joel C. Hoppe
United States Magistrate Judge